IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TRACY A. WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 07-125-E-LMB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Tracy A. Williams' Petition to Review the final decision of Commissioner of Social Security (Docket No. 1) denying her claims for Social Security disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 301, *et seq.*  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

On December 2, 2003, Tracy A. Williams ("Petitioner" or "Claimant") applied for disability insurance benefits under Title II (AR 58-65) and supplemental security income under Title XVI (AR 253-259).  Plaintiff alleged disability beginning June 1, 2003 due to severe depression, anxiety, and panic attacks (AR 74).  Petitioner's applications were denied initially on

**MEMORANDUM DECISION AND ORDER - 1**

March 15, 2004 (AR 34) and again upon reconsideration on July 2, 2004 (AR 40).

On September 3, 2004, Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  (AR 46).  The ALJ held a video hearing on March 14, 2006 at which time Petitioner, represented by counsel, appeared and testified in Boise.  (AR 27, 290). Also testifying were: Dr. J. Michael Dennis, Ph.D., a licensed clinical psychologist (AR 317); Anne Aastum, a vocational expert (AR 337); and claimant's husband, J.C. Williams (AR 309). The ALJ presided over the hearing from Billings, Montana. (AR 283).

Petitioner testified that she has had severe depression issues throughout her life and, as a result, had attendance issues with previous employment (AR 292)("I couldn't get myself out of bed.  I couldn't get myself motivated to go to work.  And I would have to call into work sick"). In 1992, Petitioner was admitted to a hospital in Idaho Falls for severe depression and was treated with medication and counseling from 1992 through 1995, when she felt better and went off her medication.  (AR 292-93).  In October 2003, Petitioner was admitted to another facility, Franklin House, because of her suicidal ideation and self-mutilation.  (AR 308).

At the time of the hearing, Petitioner explained that she is "depressed all the time."  (AR 297).  As she describes:

> I have days that I can function and days that I have a hard time just making eye contact.  If I am having a good day, I can hold a conversation with somebody.  I can function.  I can accomplish a task.  But like today, I can't think straight.  I don't have - - I'm not making eye contact very well right now.  I lose my train of thought and occasionally cry in public.

(AR 297-98).

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner testified that her husband and children do most of the chores around the house. (AR 298).  Petitioner described that her husband leaves her a list each day with a task on it to be completed before he returns from work and she does not always get it done.  *Id.*  Petitioner also testified that she does not go anywhere by herself and experiences suicidal ideation daily.  (AR 298, 307).

Petitioner's husband also testified regarding Petitioner's inability to complete tasks.  (AR 309-310).  He also testified that his wife cannot drive, does not leave the house, and experienced a great deal of anger and stress when she worked between 1997 and 2002.  (AR 313-316).

At the hearing, Petitioner's counsel argued that Petitioner's condition is so severe as to meet the listing requirements under 12.04 and 12.06, and she does not possess the residual functional capacity to maintain gainful employment.  (AR 287).

The medical expert testified that Petitioner has been diagnosed with a major depressive disorder, a generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), and panic disorder.  (AR 319).  The medical expert noted that the written record does not reflect the severity of symptoms that Petitioner and her husband described in their oral testimony.  (AR 334).

On June 8, 2006, the ALJ issued a decision denying Petitioner's claim for benefits.  (AR 16)).  The ALJ found that Petitioner has the following severe impairments: major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and panic disorder.  (AR 18).  The ALJ further found that, as a result of these impairments, Petitioner does not have the residual functional capacity to perform her past relevant work.  (AR 24).  However, given Petitioner's age, education, work experience, and residual functional capacity, she can perform

**MEMORANDUM DECISION AND ORDER - 3**

the requirements of certain, identifiable jobs that exist in significant numbers in the national economy.  (AR 25).  For example, Petitioner would be able to perform the requirements of the following representative occupations: industrial cleaner, machine feeder, and hand packager. (AR 25).

Petitioner requested the Appeals Council review the ALJ's decision.  (AR 274).  The Appeals Council denied Petitioner's request on January 12, 2007 making the ALJ's decision the final decision of the Commissioner of Social Security.  (AR 5).

Having exhausted her administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ's decision is in error, because: (1) Petitioner's impairment or combination of impairments meets or medically equals the criteria for an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, specifically listings 12.04 and 12.06; (2) the ALJ did not properly support the decision to disregard the testimony of treating psychologist, Dr. Barney Greenspan and Petitioner's husband; and (3) the ALJ did not properly support his finding that Petitioner is not credible.  *Petitioner's Brief*, pp. 7-14 (Docket No. 17).

For relief, Petitioner requests that the ALJ's decision be reversed or, in the alternative, this matter be remanded in order to allow the ALJ an opportunity to further evaluate the evidence.  *Id.* at 16.  If remanded, Petitioner requests that her case be assigned to a different ALJ. *Id.*

**MEMORANDUM DECISION AND ORDER - 4**

## II.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

**MEMORANDUM DECISION AND ORDER - 5**

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id.* at 1095 (citation omitted).

## III.

## DISCUSSION

### A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step, sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997). The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20

**MEMORANDUM DECISION AND ORDER - 6**

C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity at any time relevant to the decision.  (AR 18).  The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ found that Petitioner has the following severe impairments: major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and panic disorder. (AR 18).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, after conducting a special review of listings 12.04 and 12.06, the ALJ concluded that Petitioner's severe impairments do not meet or equal any listing of impairments.  (AR 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ concluded that Petitioner is unable to perform past relevant work as a sales clerk, loan officer, customer service representative or service dispatcher, because these jobs require working around people.  (AR 24).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

**MEMORANDUM DECISION AND ORDER - 7**

404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

Based on a vocational expert's testimony, the ALJ found that claimant retains the ability to do alternate work and there are jobs that exist in significant numbers in the national economy that Petitioner can perform. (AR 25). As a result, the ALJ concluded that Petitioner is not disabled under sections 216(I), 223(d) and 1614(a)(3)(A) of the Social Security Act. (AR 18).

**B.   Analysis**

Petitioner argues that the ALJ erred at Step Three of the sequential process by finding Petitioner does not meet the listing requirements under 12.04 and 12.06 of 20 C.F.R. Part 404, Subpart P. Appendix 1. Petitioner also argues that the ALJ erred by disregarding the testimony of Petitioner, her husband, and medical expert, Dr. Barney Greenspan.

### 1.   The Listing Requirements for Affective and Anxiety Related Disorders

The listings in 20 CFR Part 404, Subpart P. Appendix 1 describe "impairments . . . severe enough to prevent an individual from doing any gainful activity, regardless of his [or her] age, education, or work experience." 20 C.F.R. § 404.1525(a). "To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all the criteria of the listing." 20 C.F.R. § 404.1525(d).

**Affective Disorders.** Listing 12.04 sets out the requirements necessary to find a Petitioner disabled due to affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood reflects to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Part 404, Subpart P. Appendix 1, 12.04. A claimant can meet the listing requirements either by satisfying criteria in both Categories A and B or by satisfying the criteria

**MEMORANDUM DECISION AND ORDER - 8**

in Category C.

The Category B criteria require at least two of the following: marked restrictions of activities in daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation each of extended duration.  20 C.F.R. Part 404, Subpart P. Appendix 1, 12.04. The Category C criteria are as follows:

> Medically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.  Repeated episodes of decompensation, each of extended duration; or
>
> 2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3.  Current history of 1 or more years' inability to function outside ta highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

**Anxiety-Related Disorders.**  Listing 12.06 sets out the requirements necessary to find a Petitioner disabled due to anxiety related disorders, are disorders in which "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders."  20 C.F.R. Part 404, Subpart P. Appendix 1, 12.06.  A claimant can meet the listing requirements either by satisfying criteria in both Categories A and B or by satisfying the criteria in both Categories A and C.  The criteria in Category  B in Listing 12.06 are identical to the criteria in Category B in listing 12.04.  *Id.*

**MEMORANDUM DECISION AND ORDER - 9**

However, Category C requires, the "complete inability to function outside the area of one's home."  *Id.*

The ALJ addressed the listings together and determined that the medical evidence and medical expert's testimony support a finding that "the effects of the claimant's mental impairments have not resulted in at least two marked limitations or any extreme limitations under the 'B' criteria."  (AR 19).  Further, the evidence "does not establish the presence of the 'C' criteria."  *Id.*

Petitioner argues that the ALJ's conclusions are not supported by specific findings and is contrary to the testimony and evidence from Petitioner, her husband, medical records from Terry Reilly, and Dr. Greenspan's evaluation.  *Petitioner's Brief*, p. 8 (Docket No. 17).  However, the standard of review requires only "substantial evidence." *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d at 1374.  Therefore, where, as here, there is substantial evidence to support the ALJ's factual decision, it must be upheld, even if there is conflicting evidence.

**Category "B" Criteria**.  The ALJ relied on Dr. Dennis' testimony in support of the finding that "claimant's mental impairments have resulted in mild restrictions of daily living." (AR 20).  Considering the written evidence alone, Dr. Dennis determined that Plaintiff had moderate restrictions in daily living.  (AR 333).  Relying upon Dr. Greenspan's written report (AR 127), Dr. Dennis noted that claimant gets up relatively early, gets four children off to school, does some household chores, attends a lot of appointments.  (AR 334).  The ALJ notes these findings in the decision.  (AR 20).

**MEMORANDUM DECISION AND ORDER - 10**

The ALJ also relied upon Dr. Dennis' testimony in support of the finding that claimant's mental impairments have resulted in mild difficulties in maintaining social functioning.  (AR 20).  Dr. Dennis, relying upon Dr. Greenspan's written report (AR 127) as well as the written notes of treating counselor Libby Engebrecht (AR 201-251), testified that he "really got the sense that this is a person, who, you know, was frequently irritable, frequently had difficulty getting along with others, you know, had some trouble getting out in public. . . . But . . . didn't see anything in the written record that reflected the level of severity that the Claimant was describing or her husband was describing."  (AR 334).

As for the third criteria in Category B, the ALJ relied upon Dr. Dennis again, who testified that, based on Dr. Greenspan's report, he opined that Plaintiff experienced mild difficulties in maintaining concentration, persistence, or pace (AR 334).  Dr. Dennis also concluded, based on Plaintiff's testimony, that she suffered only moderate difficulties in maintaining concentration, persistence, and pace.  (AR 332).  The ALJ relied on his experience with Petitioner at the hearing noting that "claimant was able to track and follow questions at the hearing."  (AR 20).

Because Plaintiff had to establish two of these criteria, it is not necessary to determine whether she experienced "[r]epeated episodes of decompensation, each of extended duration" as required under the fourth criteria in Category B.  With regard to the first three criteria, the ALJ made reasonable decisions, supported by the testimony of the medical expert, which was based on specific evidence in the record.  Therefore, there is substantial evidence in the record to support the ALJ's finding that Petitioner did not meet the "B' criteria set forth in Listings 12.04 and 12.06.

**MEMORANDUM DECISION AND ORDER - 11**

**Category "C" Criteria**.  Claimant also takes issue with the ALJ's finding that "[t]he evidence does not establish the presence of the 'C' criteria."  Claimant argues the ALJ does not provide any support for this finding and did not ask the medical expert at the hearing whether the "C" criteria were met.  *Petitioner's Brief*, p. 8 (Docket No. 17).  The problem with this argument is it touches upon the inherent difficulty in proving a negative.  Moreover, immediately following his conclusion regarding the non-existence of the "C" criteria, the ALJ provides a description of Plaintiff, which is supported by substantial evidence in the record and supports the conclusion that Claimant cannot meet the "C" criteria specific to Affective Disorders under 12.04 and Anxiety Related Disorders under 12.06 .

In support of his conclusion that Petitioner does meet the listed impairments, the ALJ states:

> The claimant functions better than contemplated by any of the listings despite her depression and anxiety.  Although she still has psychiatric symptoms and has been irritable mostly with her family members, she has remained capable of managing her household and supervising her children's activities.  She has had no significant difficulty with attention and concentration.  She has reported stress related to contact with the public and avoids public contact but has been noted to have intact social skills and has been pleasant, polite and communicated well.  The claimant has received outpatient mental health treatment and has taken prescription medications.  The claimant has not been admitted for inpatient psychiatric care in the relevant period.

(AR 19).

The one problem with these findings is that Claimant was admitted for inpatient psychiatric care during the relevant time period.  *See Petitioner's Brief*, p. 8 (Docket No. 19).  Between October 22 and 25, 2003, Claimant was admitted to Franklin House (AR 119-126).  Nonetheless, the remaining evidence adequately supports the conclusion that Claimant cannot meet the C criteria for Listings 12.04 and 12.06 even if she was admitted for in-patient care for

**MEMORANDUM DECISION AND ORDER - 12**

three days in October 2003.  Nonetheless, this error was harmless under the circumstances.

To meet the C criteria for 12.04, Affective Disorders, Claimant must establish repeated, threatened, or constant decompensation.  20 C.F.R. Part 404, Subpart P. Appendix 1, 12.04.  The two in-patient hospitalizations, which took place in 1991 and 2003, do not establish this level of decompensation.

Similarly, to meet the C criteria for Listing 12.06, Anxiety Related Disorders, Claimant must demonstrate "complete inability to function independently outside the area of one's home." 20 C.F.R. Part 404, Subpart P. Appendix 1, 12.06.  Again, this runs contrary to the evidence cited by the ALJ and the conclusion would not change with the inclusion of evidence regarding Petitioner's hospitalization for a few days in October 2003.

In short, the ALJ's decision at step three of the sequential process will not be disturbed on appeal.  The ALJ's finding that Petitioner has not met the criteria for a listed impairment is supported by substantial evidence and reflects the correct application of relevant law.

### 2.   Petitioner's Credibility

To decide whether to accept a claimant's subjective symptom testimony, an ALJ must perform a two-step analysis.  In the first step, the ALJ must determine whether the claimant has presented subjective medical evidence of an underlying impairment that could reasonably be expected to produce the symptom alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  If the claimant meets the first step, the ALJ must move on to the second step and determine whether claimant's subjective testimony is credible.  *See id.* at 1036.  In this second step, unless there is evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing

**MEMORANDUM DECISION AND ORDER - 13**

reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  To fulfill this requirement, the ALJ must state "specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284; *see Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

It is undisputed that there was sufficient, objective evidence in the record to support the ALJ's finding that Plaintiff suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and panic disorder.  Further, the ALJ did not find that Plaintiff was malingering.  Therefore, the ALJ was required to set forth specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  *See Lingenfelter*, 504 F.3d at 1036.

The ALJ did not completely reject Petitioner's testimony although he determined that such testimony "suggested the possibility of greater restriction of the ability to function than can be demonstrated by the objective medical evidence alone."  (AR 20).  The ALJ generally found "[t]he overall picture presented by the evidence does not support the marked degree of mental limitations and total inability to work alleged by the claimant and her husband."  (AR 21).  In support of this finding, the ALJ pointed to the following evidence (AR 21-24):

(1) The ALJ noted that the Claimant had one prior inpatient admission for depression and anxiety in 1991 but engaged in substantial gainful activity for years even without the benefit of any medication or treatment for her underlying depression and anxiety.  (AR 21).  While this is not entirely accurate, as the Petitioner submitted evidence that she was also hospitalized in 2003, it effectively describes Petitioner's experience between 1992 and 2003.  Furthermore, the ALJ effectively addressed Petitioner's experience with sever depression in 2003 as detailed below.

**MEMORANDUM DECISION AND ORDER - 14**

(2) The ALJ noted that Claimant's underlying depression worsened in June 2003 and,

though he did not address the admission to Franklin House, the ALJ noted that Petitioner

stabilized with initiation of psychiatric medications and outpatient therapy services within 12

months.  (AR 21).  In support of this finding, the ALJ relied upon specific treatment notes from

Terry Reilly Health Services, including the following:

> December 26, 2003:  "Feeling better.  Gets outside @least 10 min. every day.  Is driving
> again- stressful but tolerable" and ""She denies any suicide ideation.  She feels increased
> ability to go shopping and generally perform activities outside the house albeit in a
> limited capacity.  So far, she is quite pleased with her response to the Prozac and the
> counseling with Libby." (AR 165);
>
> March 30, 2004: "She state [sic] that Xanax helps a lot.  She is able to drive places by
> herself, go into stores without any problems and generally do things;" (AR 159)
>
> April 23, 2004: "She states that she is doing quite a bit better than she was before. . . . She
> is smiling and pretty relaxed the whole interview.  Eye contact good, dress was normal."
> (AR 157).
>
> May 26, 2004: "She is doing better with more energy, and her attitude is better. . . .  She
> looks quite good today.  Affect is bright.  Eye contact is good.  Smiling, relaxed." (AR
> 151).
>
> June 25, 2005: "She states she is doing clearly better on the Effexor plus the other med
> she is on.  She notes she has increased energy, and she is increasingly functional.  She still
> has some bad days among the good days, but there is a fairly significant improvement."
> (AR 247).
>
> September 21, 2004: "The patient feels she is doing pretty well.  She is still on
> medication, managing things."  (AR 243).
>
> November 24, 2004: "She really looks quite good today.  She is smiling, relaxed, calm, in
> control, alert.  (AR 235).

**MEMORANDUM DECISION AND ORDER - 15**

December 17, 2004: "[T]he Abilify at the 10 mg every morning, she notes a fairly clear dramatic benefit.  She is still having some mood swings but it is clearly a major step forward." (AR 234).[1]

Based on these treatment notes, the ALJ determined that Claimant has taken medications to good effect.  (AR 23).  He also noted that she not required an increasing level of care that one might expect if she were as incapacitated by depression and anxiety as alleged.  *Id.*.

(3) The ALJ also noted a contradiction between the testimony of Claimant and her husband and other statements in the record concerning Claimant's ability to drive alone.  Claimant and her husband testified that she cannot drive alone; however, Claimant admitted to driving to her medical appointments.  (AR 163).

(4) The ALJ noted that Claimant has made statements in the records that she is able to cook and clean at her own pace, supervises and monitors her children's activities, and gets out of the house regularly to attend appoints.  (4E).  The ALJ also mentioned that Claimant's testimony that others in the household are responsible for most of the housework does not establish that Claimant cannot do more, given her response to medication and treatment.  (AR23).

The above constitutes specific, clear and convincing evidence sufficient to uphold the ALJ's decision to reject some of Claimant's testimony.  The decision includes four pages of detailed, thoughtful consideration of the claimant's stated limitations and the extent to which the ALJ considered such limitations truthful, consistent with the evidence in the record, or indicative of an inability to work.

---

[1]     A number of these treatment notes from Terry Reilly also identify a difference in experience between physician Richard Gerber and licensed clinical social worker, Libby Engebrecht.  For example, on December 17, 2004, Dr. Gerber "She certainly interacts well with me.  I notice she describes a little more volatility with Libby."  (AR 234).

**MEMORANDUM DECISION AND ORDER - 16**

### 3.   Petitioner's Husband

Petitioner argues that the ALJ did not properly reject the testimony of Petitioner's husband.  *Petitioner's Brief*, pp. 12-13 (Docket No. 17).

Generally, "friends and family members are competent to testify as to [a claimant's] condition."  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  "[T]estimony from lay witnesses who see the claimant everyday is of particular value."  *Regenittur v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).  "Such testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness. " *Dodrill*, 12 F.3d at 919.

The ALJ found that Petitioner's husband's testimony was generally credible, except with regard to the Petitioner being precluded from all types of work.  (AR 24).  In making this determination, the ALJ relied upon the same evidence that he used when discounting Petitioner's testimony.  For example, the same evidence in the record that conflicts with Petitioner's testimony with regard to her daily activities, conflicts with Petitioner's husband's testimony.  *See Daily Activity Questionnaire* (AR 95).  Similarly, the same evidence that conflicts with Petitioner's testimony regarding her inability to drive conflicts with Petitioner's husband's testimony regarding her ability to drive.  *See, e.g. Terry Reilly Treatment Notes* (AR 163).  Because the evidence and reasoning in support of discounting Petitioner's testimony is also germane to Petitioner's husband's testimony and supported by substantial evidence in the record, the decision to discount Petitioner's husband's testimony will not be disturbed on appeal.

**MEMORANDUM DECISION AND ORDER - 17**

**4.      Dr. Barney Greenspan (AR 22)**

Plaintiff argues that the ALJ did not properly disregard the medical opinion of Dr. Barney Greenspan, a non-treating observing physician.  *Petitioner's Brief*, pp. 10-11 (Docket No. 17).

Dr. Barney Greenspan, Ph. D., is a Board Certified Clinical Psychologist who examined Plaintiff on February 24, 2005 at the request of the Social Security Administration.  (AR 127). The ALJ generally accepted Dr. Greenspan's report and gave it "moderate weight since it was based on clinical interview and examination, and was generally consistent with other evidence." (AR 22).

Petitioner argues that the ALJ's decision is in error, because he did not provide specific, clear and convincing reasons for rejecting the uncontradicted opinion of an acceptable medical source.  *Petitioner's Brief*, p. 11 (Docket No. 17) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Bibby v. Schweiker*, 762 F.2d 716, 718 (9th Cir. 1985).  This is the rule when an examining doctor's opinion is not contradicted.  *Id.*  When an examining doctor's opinion is contradicted, then the ALJ cannot disregard it without specific and legitimate reasons that are supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830-31.

The ALJ did not reject Dr. Greenspan's opinion.  In fact, the ALJ relied upon Dr. Greenspan's observations and conclusions in the decision.  (AR 20).  Dr. Greenspan noted that Petitioner was on time, appropriately groomed, cooperative and forthright.  (AR 129).  Dr. Greenspan also noted that she was alert and oriented to person, time and situation and appeared to function in the high range of intellectual abilities.  *Id.*  Her attention span was within normal limits, her language comprehension was intact, and her speech was satisfactory in temp; she demonstrated a satisfactory tolerance for frustration and did not become unduly distracted when

**MEMORANDUM DECISION AND ORDER - 18**

she made mistakes upon examination.  *Id.*  Based on this evaluation. Dr. Greenspan opined that

"Tracy's abilities to perform work related mental activities, such as understanding and

remembering, as well as sustaining focus & concentration, are intact."  (AR 130).  He also

determined that Tracy was impaired with regard to persistence, adaptability, judgment and

ability to socially interact and diagnosed her with major depressive disorder, PTSD, and

generalized anxiety disorder.  (AR 130).  All of these findings are consistent with the ALJ's

decision.

The only issue the ALJ had with Dr. Greenspan's opinion was with regard to the severity

of Petitioner's impairments, which appear to be connected to Petitioner's reported suicidal

ideation.  Petitioner reported to Dr. Greenspan that she has "severe" suicidal thoughts (AR 127),

and Dr. Greenspan's prognosis for Petitioner reflected this: "The prognosis is most guarded at

this time due to the intensity and long-standing history of her difficulties.  I consider Tracy a

moderate suicidal risk at this time."  (AR 130).  As the ALJ noted, Petitioner's report of suicidal

ideation was inconsistent with the treatment notes from Terry Reilly, where she received regular

treatment.  Moreover, it was inconsistent with the weight of the evidence in the record, including

the testimony of medical expert, Dr. Dennis.  Therefore, the decision to disregard this small

portion of Dr. Greenspan's report, which was based on legitimate and specific reasons, supported

by the record, is sufficient.  *See Morgan*, 169 F.3d at 600.

**MEMORANDUM DECISION AND ORDER - 19**

# IV.

## CONCLUSION

Although there is some evidence tending to support Petitioner's position, Petitioner's primary contentions appear to be that the ALJ gave too much weight to the evidence upon which he relied and did not give enough weight to other evidence favorable to Petitioner.  However, as the Court has discussed, the ALJ is the fact finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579;  *Vincent on Behalf of Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.  The Court finds that the evidence upon which the ALJ relied can reasonably and rationally be relied upon to support his conclusion, despite the fact that such evidence may be susceptible to a different interpretation.

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.  Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision is upheld.

## V.

## ORDER

Based on the foregoing, the decision of the Commissioner is affirmed and this action is dismissed in its entirety with prejudice.



DATED:  **August 5, 2008**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**